**MACQUESTEN GENERAL CONTRACTING, INC., Plaintiff–Counter–Defendant–Appellant,**

**American Motorist Insurance Company, Third–Party–Defendant–Appellant,**

v.

**HCE, Inc. and John Hildreth, Defendants–Third–Party–Plaintiffs–Counter–Claimant–Appellees,**

**Rella Fogliano, Pasqual Fogliano, Palmer Court Associates, LLC, and Sabino Fogliano, Third–Party–Defendants.**

**Nos. 04–0418CVL, 04–0503CVCON.**

United States Court of Appeals, Second Circuit.

March 23, 2005.

Peter S. Herman, McLaughlin & Stern, LLP, New York, NY, for appellant Mac-Questen General Contracting Inc.; Theodore M. Baum, Ernstrom & Dreste, LLP, Rochester, NY, for appellant American Motorist Insurance Co., for Appellants.

Joseph P. Parnac, St. John & Wayne, LLC, New York, NY, for Appellees.

PRESENT: STRAUB, WESLEY, Circuit Judges, and SESSIONS, Chief District Judge.*

SUMMARY ORDER

This is an appeal from a judgment of the District Court entered in favor of HCE, Inc. and its president John Hildreth (collectively, "HCE"), and against Mac-Questen General Contracting, Inc. ("Mac-Questen") and the American Motorist Insurance Company ("AMIC"). The case arises out of a dispute between MacQuesten (the general contractor) and HCE (the subcontractor). It has been the subject of a summary judgment opinion, *MacQuesten General Contracting, Inc. v. HCE, Inc.,* 191 F.Supp.2d 407 (S.D.N.Y.2002) (Marrero, J.), and a decision on the post-trial

---

* The Honorable William K. Sessions III, Chief Judge, United States District Court for the District of Vermont, sitting by designation.

motions, *MacQuesten General Contracting, Inc. v. HCE, Inc.,* 296 F.Supp.2d 437 (S.D.N.Y.2003) (Francis, *M.J.*). Familiarity with each of these and the underlying facts is assumed.

After a jury trial before Magistrate Judge James C. Francis, IV, the jury awarded HCE damages on its counterclaims against MacQuesten for, among other things, breach of written and oral contracts and for conversion. MacQuesten filed post-trial motions for a new trial pursuant to Federal Rule of Civil Procedure 59(a), arguing primarily that, as a matter of law, the damage award based on certain "unpaid invoices" was improper. MacQuesten also raised (unpreserved) objections to the jury charge under Rule 51, and it sought a new trial on the compensatory and punitive damages arising out of the conversion claim. The Magistrate Judge denied MacQuesten's post-trial motions, except that it ordered remittitur as to certain damages. (HCE accepted the remittitur.)

In addition, following the jury trial, HCE moved to foreclose on a Notice of Mechanics' Lien and collect on a discharge bond issued by AMIC to secure the lien. MacQuesten and AMIC opposed the motion and filed cross-motions to vacate the lien on various grounds, including that the Notice of Lien had not completely described the property subject to lien. The Magistrate Judge denied the cross-motions, granted HCE permission to amend its lien *nunc pro tunc* to correct the property description, and granted HCE's motion to foreclose on the amended lien.

After judgment was entered, MacQuesten and AMIC timely filed notices of appeal and challenge the Magistrate Judge's denial of their post-trial motions. For substantially the reasons stated in the Magistrate Judge's thoughtful and thorough opinion, we AFFIRM the judgment.

## DISCUSSION

MacQuesten moved for a new trial under Rule 59(a) on the grounds that HCE, as a matter of law, has no right to damages for "unpaid invoices." While MacQuesten failed during the trial to make a motion for judgment as a matter law pursuant to Rule 50(a), that is no impediment to a Rule 59(a) motion. Under Rule 59(a), a new trial may be granted even if there is substantial evidence supporting the jury's verdict, and the trial judge is free to weigh the evidence independently and need not view it in the light most favorable to the verdict winner. *See Manley v. Ambase Corp.* 337 F.3d 237, 244–45 (2d Cir.2003). Nonetheless, to order a new trial under Rule 59(a), the trial judge must conclude that "the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." *Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992) (internal quotation marks omitted); *see also Manley,* 337 F.3d at 245. We review a trial court's denial of a Rule 59(a) motion for abuse of discretion. *See Manley,* 337 F.3d at 245; *Song,* 957 F.2d at 1047.

■ On appeal, MacQuesten argues that, as a matter of law, HCE has no right to damages for "unpaid invoices"—unpaid amounts stated in HCE's invoices but not stated in certain "Payment Forms" that HCE submitted as progress payment applications. MacQuesten argues that, under the subcontracts, the submission of Payment Forms was a condition precedent to any payment and precludes recovery of any amount not stated in the Forms. MacQuesten also argues that HCE unambiguously waived its right to payment on the invoices because the Payment Forms contained a certification that HCE was being paid in full for all work done during the relevant pay period and contained a release ("Partial Waiver of Lien") as to any claims against the owner or contractor for services rendered during the pay peri-

od. Throughout the litigation, however, HCE has argued that, due to MacQuesten's financial difficulties during the project, MacQuesten and HCE orally agreed to a system of partial payments. According to HCE, under this system, the Payment Forms reflected amounts that MacQuesten was able to pay at the time and MacQuesten agreed to pay HCE the full amounts stated in the invoices. We agree with the Magistrate Judge that MacQuesten's arguments in this regard do not merit a new trial.

First, the District Judge[1] denied MacQuesten's motion for summary judgment based on the waiver argument and found that, despite the waiver in the Payment Forms, a factual issue existed "as to whether the parties did in fact implement a system of partial payment for work performed." The District Judge noted evidence of a practice of the parties to treat "the waivers in the progress payment applications [as] receipts of partial payments with full payment on the invoices due at a later date." New York case law directly on point supports the District Judge's conclusion: "Where a waiver form [submitted by a subcontractor] purports to acknowledge that no further payments are owed, but the parties' conduct indicates otherwise, the instrument will not be construed as a release." *West End Interiors, Ltd. v. Aim Constr. & Contracting Corp.,* 286 A.D.2d 250, 729 N.Y.S.2d 112, 114–15 (App. Div. 1st Dep't 2001); *see also Apollo Steel Corp. v. Sicolo & Massaro, Inc.,* 300 A.D.2d 1021, 752 N.Y.S.2d 493, 494 (4th Dep't 2002) (reversing summary judgment dismissal on facts similar to this case).

Moreover, the jury was charged as to HCE's *breach of oral contract claim* "that MacQuesten orally agreed to pay HCE for the entire amount HCE invoiced MacQuesten for all of the goods and services pro-

vided by HCE in connection with the project." The jury found that MacQuesten breached this oral contract. On appeal, MacQuesten does not specifically dispute—or even mention—the breach of the oral contract. The jury's finding that MacQuesten agreed to implement a partial-payment system and pay HCE based on the invoices vitiates any argument that a condition precedent or waiver under the initial written contracts precludes recovery. Thus the Magistrate Judge did not exceed his allowable discretion in finding no seriously erroneous result or miscarriage of justice as to the damages for the unpaid invoices.

Also with respect to HCE's right to damages on the "unpaid invoices," MacQuesten asserts that the jury charge did not include proper waiver and condition precedent instructions. Because MacQuesten did not preserve its objections during trial, pursuant to Fed.R.Civ.P. 51(d)(2), as amended effective December 1, 2003, we review the jury instructions for plain error. The plain error standard replaces the more stringent "fundamental error" standard that was employed in this Circuit prior to the 2003 amendment and that was applied by the Magistrate Judge on the post-trial motions. In any event, there is no plain error or fundamental error in the jury instructions. The instructions generally followed New York law on waiver, and, given the jury's finding of a breach of an oral contract, any potential error could not have affected MacQuesten's substantial rights or the fairness and integrity of the proceedings.

■ MacQuesten further challenges the damage awards arising out of the conversion claim. For substantially the reasons stated by the Magistrate Judge, the jury was entitled to find in HCE's favor as to the compensatory damages. As to the pu-

---

1. United States District Judge Victor Marrero ruled on the motions for summary judgment. Following that decision, the parties consented to trial before the Magistrate Judge.

nitive damages, there is some authority to suggest that, under New York law, where the claims arise out of a breach of contract, punitive damages are only available if the offending conduct was aimed at the general public. *See New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 767 (1995). As the Magistrate Judge observed, however, the public-aim requirement has generally been applied to breach of contract claims and fraud claims arising out of contract; it generally has not been applied to claims that, while related to a contract dispute, do not arise out of the contract itself. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.,* No. 02 Civ. 7689, 2003 WL 22795650, at *8–*9 (S.D.N.Y. Nov.25, 2003) (applying public-aim requirement to fraudulent inducement claim but not to breach of fiduciary duty claim that, while related to the contract claim, arose out of a relationship that predated the contract); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group N.V.,* No. 94 Civ. 4725, 1999 WL 11553 (S.D.N.Y. Jan.13, 1999) (denying motion to strike punitive damages claim for abuse of process and malicious prosecution arising out of contract dispute); *cf. TVT Records v. Island Def Jam Music Group,* 262 F.Supp.2d 188, 193–96 (S.D.N.Y.2003) (collecting cases and noting exceptions to general rule that a public aim is required for punitive damages for a contract claim). We agree with the Magistrate Judge that, under the facts of this case—where MacQuesten had no colorable right to HCE's equipment and was not acting under the contract—the conversion is a tort separate from the contract claim, and there is no public-aim prerequisite for punitive damages. Moreover, the Magistrate Judge did not exceed his allowable discretion in finding that, under the facts presented at trial, the jury was entitled to award punitive damages.

Finally, AMIC and MacQuesten challenge the Magistrate Judge's decisions allowing HCE to amend its Notice of Mechanics' Lien and to foreclose on the lien. The appellants raise four arguments in this respect: (1) that HCE waived its lien rights by submitting the Payment Forms, (2) that HCE's lien should be vacated because the initial Notice of Lien misidentified the property subject to lien; (3) that the lien should be vacated pursuant to New York Lien Law section 19(6) for inclusion of non-lienable amounts; and (4) that granting HCE's motion for foreclosure was premature because HCE allegedly failed to establish a "lien fund" under New York Lien Law. While the Magistrate Judge addressed the first two arguments, it did not address the second two arguments, although they were properly raised by AMIC below.

First, for the reasons explained above and stated by the Magistrate Judge, MacQuesten's and AMIC's arguments on the waiver issue fail.

■ Second, although the initial Notice of Lien did not completely describe the property, the Magistrate Judge found that the Notice sufficiently and unambiguously described the property and that allowing HCE to amend the lien would not prejudice the rights of any creditors. We find the Magistrate Judge's thorough analysis of the case law as applied to the facts of this case persuasive. Thus AMIC's and MacQuesten's cross-motions to vacate the lien were properly denied, and it was within the Magistrate Judge's allowable discretion to permit HCE to amend its lien *nunc pro tunc.*

■ Third, AMIC argues that the lien should be summarily canceled pursuant to N.Y. Lien Law section 19(6) because HCE sought amounts that were not properly subject to lien. This argument, while not addressed by the Magistrate Judge, is without merit. Lien Law section 19(6) provides that a lien may be summarily canceled "[w]here it appears from the face

of the notice of lien that the claimant has no valid lien by reason of the character of the labor or materials furnished and for which a lien is claimed." N.Y. Lien Law § 19(6). But AMIC does not allege that HCE has "no valid lien" apparent "from the face of the notice of lien." AMIC's claim is that HCE attempted to foreclose on the lien for the entire jury award and that the award, if itemized, includes some non-lienable amounts. But the initial notice of lien, on its face, properly sought unpaid amounts for labor and materials for the project. Moreover, nothing in Lien Law section 19(6) suggests that an entire lien should be canceled if the lien is asserted partly over valid amounts and partly over non-lienable amounts. The proper remedy for the inclusion of non-lienable damages was simply to reduce the amount subject to lien to the damages for the unpaid invoices, and that is what the Magistrate Judge did.

Fourth, and finally, AMIC argues that HCE never established the existence of a "lien fund." Under New York law, a subcontractor's lien is restricted to amounts unpaid to the general contractor under the contract between the property owner and general contractor at the time the lien was filed. *See* N.Y. Lien Law § 4(1); *104 Contractors, Inc. v. R.T. Golf Assocs.*, 270 A.D.2d 817, 705 N.Y.S.2d 752, 754 (App. Div. 4th Dep't 2000). AMIC claims that HCE failed to show that there were unpaid amounts owing to the general contractor at the time the lien was filed, and the Magistrate Judge never made any explicit finding to this effect. HCE responds in its appellate brief that, according to undisputed evidence presented at trial, shortly after the lien was filed, a sum of $8,016,970 ($3,118,848 from Phase I and $4,898,122 from Phase II of the project) was remaining unpaid to MacQuesten based on the contract price to which the owner and MacQuesten agreed. Those sums, HCE argues, were more than suffi-cient to cover the roughly $1.7 million asserted in HCE's initial lien. Neither in its reply brief nor at oral argument did AMIC respond to this point or dispute the numbers. Indeed, AMIC has never argued that, as a matter of fact, there was no lien fund; it simply claims that HCE failed to prove the existence of such a fund and that the Magistrate Judge failed to make explicit findings as to the fund. HCE's unchallenged argument appears correct and AMIC has produced no basis to require vacating the judgment on this issue.

We have considered each of the appellants' remaining arguments on appeal and find them to be without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.